**ORDERED.**

**Dated: July 01, 2026**

Grace E. Robson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| iCoreConnect Inc. and | ) | Case No. 6:25-bk-03390-GER |
| iCore Midco Inc., | ) | Case No. 6:25-bk-03391-GER |
| | ) | |
| Debtors. | ) | *Jointly Administered Under* |
| | ) | Case No. 6:25-bk-03390-GER |

**MEMORANDUM OPINION AND ORDER (1) GRANTING IN PART
DEBTORS' MOTION FOR RECONSIDERATION AND (2) ELABORATING
ON ORDER DENYING DEBTORS' MOTION FOR AUTHORIZATION TO
PAY $205,333.34 IN BONUSES TO THE EXECUTIVE MANAGEMENT TEAM**

THIS CASE came before the Court upon the Motion for Reconsideration[1] filed by Debtors[2]

seeking reconsideration of the Order[3] which denied Debtors' request to pay compensation and

bonuses to their executive management team and directors. The Office of the United States Trustee

(the "UST") filed its Objection[4] thereto. While Debtors only seek reconsideration of the Court's

---

[1] *Debtors' Motion for Reconsideration, in Part, of the Court's Order Denying Debtors' Motion for Authorization to Pay $205,333.34 in Bonuses to the Executive Management Team* (Doc. No. 373) (the "Motion for Reconsideration").
[2] iCoreConnect Inc. ("iCoreConnect") and iCore Midco Inc. ("Midco") (collectively, "Debtors").
[3] *Order Denying Debtors' Motion for Authorization to Pay $205,333.34 in Bonuses to the Executive Management Team* (Doc. No. 359) (the "Order").
[4] *United States Trustee's Objection to Debtors' Motion for Reconsideration, in Part, of the Court's Order Denying Debtors' Motion for Authorization to Pay $205,333.34 in Bonuses to the Executive Management Team* (Doc. No. 400) (the "Objection").

denial of compensation, the Court takes the opportunity to further explain its prior ruling[5] as to both the compensation and bonus requests.

## BACKGROUND

This case was filed on June 2, 2025 (the "Petition Date"). Shortly after the case was filed, Midco filed the Officer Salary Motion,[6] seeking authority to compensate certain Officers[7] for post-petition services. Midco represented that the Officers were not "affiliates" within the meaning of § 101(2) of the Bankruptcy Code,[8] but sought approval of the compensation "[i]n an abundance of caution."[9] The Officer Salary Motion detailed the compensation amounts paid to the Officers in the one-year period preceding the bankruptcy case and sought authority to pay the Officers at "reduced compensation levels" starting in July 2025.[10] Interim Orders[11] approving the Officer Salary Motion were entered throughout this case, and the Final Order[12] approving the Officer Salary Motion was entered on October 2, 2025.

On July 28, 2025, Debtors filed a Sale Motion[13] seeking to sell substantially all of their assets pursuant to a competitive process. The Sale Motion represented that prior to the Petition Date, Debtors "extensively marketed the sale of their businesses to numerous parties," and that "[s]ince the Petition Date, the Debtors, through their management team, have again conducted an

---

[5] *See* Order ¶ 2 (citing *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1328 (11th Cir. 2007)).

[6] *Debtor's Motion to Approve Postpetition Compensation to Executive Management Team* (Doc. No. 55) (the "Officer Salary Motion").

[7] Archit Shah, CFO ("Shah"), Muralidar Chakravarthi, CTO ("Chakravarthi"), and David Fidanza, COO ("Fidanza") (collectively referred to as the "Officers").

[8] Unless otherwise specified, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[9] Officer Salary Motion ¶ 11. Local Rule 2081-1(e) requires court authority for payment of salary and benefits with respect to any officer, manager, or employee who also qualifies as an "affiliate" as defined in § 101(2)(A).

[10] Officer Salary Motion ¶ 11.

[11] *See* Doc. Nos. 87, 105, 152, and 183 (collectively, the "Interim Orders").

[12] *Order Granting Debtor's Motion to Approve Postpetition Compensation to Executive Management Team on a Final Basis* (Doc. No. 222) (the "Final Order").

[13] *Debtors' Motion for Order Authorizing the Sale of Substantially All of Their Assets to Colortech Holdings, LLC Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers* (Doc. No. 110) (the "Sale Motion").

extensive marketing campaign."[14] The Court approved sale and bidding procedures, including approval of the purchase agreement with Colortech Holdings, LLC to serve as a stalking horse bid that was subject to Debtors' receipt of higher and better offers. An auction was scheduled for September 15, 2025, and a hearing to approve the sale was scheduled for September 29, 2025.[15] Based on the results of the auction, the Court found that Standard Dental, LLC made the highest and best offer and approved the sale to it.[16]

Shortly after the sale was approved, Debtors filed their Disclosure Statement[17] and Plan.[18] The Plan proposed to pay certain compensation and bonuses to officers and directors, subject to approval by this Court.[19] The Court scheduled a combined hearing for January 27, 2026 to consider confirmation of the Plan and final approval of the Disclosure Statement.[20] The deadline for parties to file a request for allowance of an administrative expense under § 503(b) was 14 days prior to that hearing, or January 13, 2026 (the "§ 503(b) Deadline"). No executives or directors filed an

---

[14] Sale Motion ¶ 18.

[15] *See Order (1) Granting in Part Debtors' Motion for Order Authorizing the Sale of Substantially All of Their Assets to Colortech Holdings, LLC Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers and (2) Scheduling Hearing and Related Deadlines* (Doc. No. 140); *Order (1) Granting Debtors' Emergency Motion for Order Extending Certain Sale Dates and Deadlines and (2) Resetting Hearing on Certain Matters* (Doc. No. 168).

[16] *Order Granting Debtors' Motion for Order Authorizing the Sale of Substantially All of Their Assets to Colortech Holdings, LLC Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers* (Doc. No. 220) (the "Sale Order"). The title of the order references granting the motion to sell assets to Colortech only because that is how the Sale Motion was titled when it was filed.

[17] *Disclosure Statement for Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 219); *Amended Disclosure Statement for Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 263). The Court will refer to the disclosure statement and amended disclosure statement as the "Disclosure Statement."

[18] *Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 218) (the "Original Plan"). An *Amended Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 262) (the "Amended Plan") was filed on December 17, 2025 that contained a substantially similar provision, but which also referenced the efforts of the officers and directors in achieving a sale of Debtors' assets. The Court will refer to the Original Plan and Amended Plan as the "Plan."

[19] *See* Original Plan § 8.07; Amended Plan § 8.07.

[20] *See Order (I) Conditionally Approving Disclosure Statement, (II) Scheduling Combined Disclosure Statement and Confirmation Hearing, (III) Setting Related Deadlines, and (IV) Setting Deadline for Filing Administrative Expense Applications* (Doc. No. 264) (the "Order Scheduling Confirmation").

3

application for the allowance of an administrative expense. At the January 27, 2026 hearing, the Plan was confirmed and the Disclosure Statement was approved on a final basis.[21]

A few hours before the January 27, 2026 hearing, Debtors filed their Motion to Pay,[22] requesting authority to pay $205,333.34 in compensation and bonuses, broken down as follows: (a) $82,333.34 as compensation for the Officers, Chambers,[23] and the Directors[24] who were either not compensated at all during this case, or to true up reduced compensation paid during this case with pre-bankruptcy salary amounts (the "Compensation"); and (b) $115,000 to Chambers, Stellinga,[25] and the Officers (collectively, the "Executives") as bonuses (the "Bonuses") for their efforts in connection with the asset sale.

The Court held a hearing to consider the Motion to Pay on March 12, 2026 (the "March Hearing"). After reviewing the record, the Court concluded that Debtors failed to meet their burden and entered the Order.

## DISCUSSION

### A. *Reconsideration of the Order re: Compensation*

Debtors argue the Court made errors of law and fact that warrant reconsideration of the Order as to the Compensation pursuant to Rules[26] 59[27] and 60.[28] First, Debtors argue that the Court erred in relying on the Final Order to deny the Compensation because Court approval was not required and compensation can be revisited at any time during a case. Second, Debtors argue it

---

[21] *See Pro Memo* (Doc. No. 295).
[22] *Debtors' Motion for Authorization to Pay $205,333.34 in Bonuses to the Executive Management Team* (Doc. No. 293) (the "Motion to Pay").
[23] Adam Chambers, Interim CEO ("Chambers").
[24] Five members of the board of directors were identified in the Motion to Pay (the "Directors").
[25] Jeffrey Stellinga, Vice President of Business Development ("Stellinga").
[26] Unless specified otherwise, all "Rules" or "Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rules" or "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure.
[27] Rule 59 is made applicable by Bankruptcy Rule 9023.
[28] Rule 60 is made applicable by Bankruptcy Rule 9024.

was error to deny the Compensation to Chambers based on his absence from Schedule G because Chambers' salary was not rooted in a prepetition contract and would not be listed in Schedule G; instead, Chambers agreed to accept $5,000 per month for post-petition services—an amount "massively below" the median and mean wage for chief executive officers in Florida.[29] Debtors' third argument is that it was error to deny the Compensation as to the Directors based on lack of support because the Directors' compensation was set forth in public filings submitted to the U.S. Securities and Exchange Commission (the "SEC"), which reflected amounts higher than the reduced compensation the Directors agreed to be paid during the bankruptcy case.

Reconsideration of an order under Rule 59(e) "is an extraordinary remedy to be employed sparingly" due to interests in finality and conservation of judicial resources.[30] "A trial court's determination as to whether grounds exist for the granting of a Rule 59(e) motion is held to an 'abuse of discretion' standard."[31] "The only grounds for granting [a Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact."[32] "Parties 'cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'"[33] Where courts have granted relief under Rule 59(e), they generally act to: "(1) account for an intervening change in controlling law, (2) consider newly available evidence, or (3) correct clear error or prevent manifest injustice."[34]

[29] Motion for Reconsideration ¶ 27.
[30] *Mathis v. United States (In re Mathis)*, 312 B.R. 912, 914 (Bankr. S.D. Fla. 2004) (first quoting *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994); and then citing *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1073 (M.D. Fla. 1993)).
[31] *Id.* (first citing *Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985); then citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983); and then citing *Weems v. McCloud*, 619 F.2d 1081, 1098 (5th Cir. 1980)).
[32] *Lee v. Nat'l R.R. Passenger Corp.*, 772 F. App'x 865, 867 (11th Cir. 2019) (alteration in original) (quoting *Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116, 1119 (11th Cir. 1999)). In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.
[33] *Lee*, 772 F. App'x at 867 (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)).
[34] *In re Mathis*, 312 B.R. at 914 (first citing *Sussman*, 153 F.R.D. at 694; then citing *Morris v. United States*, No. 96-1035-CIV-T-24(F), 1998 U.S. Dist. LEXIS 14046 (M.D. Fla. Aug. 6, 1998); and then citing *Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)).

Pursuant to Rule 60(b)(1), a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" due to "mistake, inadvertence, surprise, or excusable neglect."[35] "[A] party seeking relief bears a heavy burden of demonstrating 'a justification so compelling that [a court is] required to vacate its order.'"[36]

### i. Finality of the Final Order

Debtors argue that the Court erred in treating the Final Order as a final order because they were not required to obtain this Court's approval to pay officers and directors for post-petition services, nothing in the Interim Orders or Final Order precluded seeking administrative expense claims pursuant to § 503(b), and compensation is always subject to reconsideration at any stage.

As to the first argument, while Debtors may not have been required to obtain the Court's approval to pay ordinary course wages or other compensation, Debtors chose to file the Officer Salary Motion, seeking authority to pay the Officers reduced compensation. In so doing, Debtors represented that the post-petition compensation to be paid to the Officers was "commensurate with industry standard,"[37] which means the reduced compensation was adequate.

Debtors also argue that nothing in the Interim Orders or Final Order precluded the Officers from seeking additional compensation. While that is true, nowhere in the Motion to Pay or the referenced orders was there any indication that "true up" compensation would accrue as an administrative expense and be paid at a later date. In fact, as noted by Debtors, orders approving affiliate officer compensation in this district typically provide that any unpaid amounts do not accrue as administrative expenses.[38] That being said, Debtors did provide notice of their intent to

---

[35] Fed. R. Civ. P. 60(b)(1).
[36] *Auto-Owners Ins. Co. v. Ralph Gage Contracting, Inc.*, 748 F. App'x 967, 969 (11th Cir. 2018) (quoting *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006)).
[37] Officer Salary Motion ¶ 12.
[38] Motion for Reconsideration ¶ 21 (referencing *Order Granting Debtor's Expedited Motion for Authority to Pay Affiliate Officer's Salary*, *In re McKenzie Contracting, LLC*, No. 8:24-bk-1255-RCT (Bankr. M.D. Fla. May 7, 2024), Doc. No. 111, wherein the court stated "[i]n the event the Debtor is not able to pay Mr. Fernandez during any pay

pay the true-up compensation in the Plan and Disclosure Statement; however, the request was described as being subject to Court approval, and the Motion to Pay was not filed until after the § 503(b) Deadline had passed.[39]

Lastly, Debtors take the position that the Final Order is interlocutory and not subject to the more restrictive standards governing reconsideration under Rules 59 and 60. Debtors analogize the Final Order to interlocutory orders in this district that approve affiliate officer compensation with the ability of the Court to reconsider them at any time. While some orders approving affiliate officer compensation may contain language allowing for such a possibility, the orders entered in this case do not. In addition, the Local Rule that provides for reconsideration of affiliate officer salary "at any time" pertains to interim orders, not final orders.[40] Contrary to Debtors' statement that the Court's ruling would upend a well-established body of case law governing ongoing review of compensation in bankruptcy cases, the Court finds it is enforcing its orders and the Local Rules as written.

"Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case."[41] Therefore, the relevant inquiry is whether the Final Order "terminate[d] a procedural unit separate from the remaining case" and "conclusively resolved the movant's entitlement to the requested relief."[42] The Court finds the Final Order terminated the issue of post-petition salary to the Officers on a final basis. The time to seek reconsideration of the Officers' salaries was before the entry of the Final Order. In addition, while the

---

period, such unpaid amount shall not automatically accrue as an [ ] administrative expense. However, Mr. Fernandez may file with the Court an administrative expense claim for any unpaid amounts").

[39] As discussed above, the § 503(b) Deadline was January 13, 2026—14 days before the hearing to consider confirmation.

[40] Local Rule 2081-1(g)(6) provides that "[a]n *interim order* to authorize the payment of salaries to Affiliate Officers is subject to review or reconsideration at any time upon the motion of a party in interest or by the Court *sua sponte.*" (emphasis added).

[41] *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37, 140 S. Ct. 582, 586, 205 L. Ed. 2d 419 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686, 1691, 191 L. Ed. 2d 621 (2015)).

[42] *Id.* at 46, 140 S. Ct. at 591.

Officers could have sought true-up compensation as an administrative expense, they did not file an application by the § 503(b) Deadline. Therefore, the Court rejects Debtors' argument that the Court erred in relying on the finality of the Final Order in denying the Compensation to the Officers.

### ii. Errors of Fact

Rule 59(e) gives courts "the chance 'to rectify its own mistakes in the period immediately following' its decision."[43] This rule is used only to reconsider matters that are "properly encompassed in a decision on the merits"[44] and courts will not address arguments or evidence that the moving party could have raised before the decision was rendered.[45] "In order to demonstrate clear error, the party must do more than simply restate his previous arguments, and any arguments the party failed to raise in the earlier motion will be deemed waived."[46]

Debtors argue that the Court erred in denying the Compensation as to Chambers based on his absence from Midco's Schedule G because Chambers was hired after the prior CEO was terminated and therefore his employment was not based on a prepetition contract that would have been listed on Schedule G. The UST argues that Debtors failed to meet their burden to demonstrate entitlement in the first instance and any error was based on their failure to provide the requisite evidence. However, the Court accepts that counsel erred at the March Hearing when representing that Chambers' employment was based on an employment contract contained in Schedule G. Based on this error of fact, the Court will reconsider its ruling as to Chambers.

As to the Directors, Debtors argue that the Court erred in denying the Compensation because the requested compensation was information that was publicly available in filings made with the SEC.

---

[43] *Banister v. Davis*, 590 U.S. 504, 508, 140 S. Ct. 1698, 1703, 207 L. Ed. 2d 58 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450, 102 S. Ct. 1162, 1166, 71 L. Ed. 2d 325 (1982)).

[44] *Id.* (quoting *White*, 455 U.S. at 451, 102 S. Ct. at 1166).

[45] *Id.* (citing 11 *Wright & Miller's Federal Practice & Procedures* § 2810.1 (3d ed. 2012)).

[46] *O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 483 (S.D. Fla. 2006) (citing *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1222 (M.D. Ga. 1997)).

This information was not included in the Motion to Pay, but it was referenced at the March Hearing and supplied in the Motion for Reconsideration. However, the public filings Debtors point to do not reflect that the requested director compensation was approved for post-petition services. iCoreConnect's Form 10-k demonstrates that the referenced compensation for the board of directors was approved in connection with calendar year 2023, but it does not reflect approved compensation for any post-petition period. Furthermore, while iCoreConnect's Form S-1 reflects that directors are entitled to compensation for attending meetings of directors in amounts as determined by the board of directors, there is nothing in the Motion to Pay, the Amended Plan, or Amended Disclosure Statement to substantiate that any such meetings took place post-petition.[47] Therefore, the Court finds there was no error in finding the request for director compensation was unsupported, and the Court will not reconsider its ruling as to the Directors.

### iii. Applicability of Administrative Expense Deadline

As noted *supra*, the § 503(b) Deadline was January 13, 2026. The Amended Plan provides that any Allowed Administrative Expenses shall be paid from Remaining Sale Proceeds as follows:

> **3.04 *Ordinary Course Liabilities*.** Upon the earlier of the entry of an order of the Bankruptcy Court or as soon as practicable after the Effective Date, the Wind Down Debtors shall pay from the Remaining Sale Proceeds all Allowed Administrative Expenses incurred in the ordinary course of business during the Bankruptcy Cases through the Closing Date and the Wind Down Expenses. Any Wind Down Expenses not paid as set forth above shall be paid by the Postconfirmation Trustee from the Trust Assets.
>
> **3.05 *Applications for Allowance of Administrative Expenses.*** Except as provided above, all Holders of Administrative Expense Claims (including Holders of any Claims for non-ad valorem Postpetition federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claim Bar Date shall be forever barred from asserting such Administrative Expense against the Debtors, the Wind Down Debtors, the Postconfirmation Trust, or any of their Assets.

---

[47] Counsel made a statement at the March Hearing that the board of directors approved the bonuses for the *Executives* but did not reference or provide any detail on approval of post-petition compensation for the *Directors*.

The Order Scheduling Confirmation provided that a party asserting entitlement to allowance of an administrative expense under § 503(b) was required to file an application for allowance of the administrative expense by the § 503(b) Deadline. The Court's Local Rules provide that in Chapter 11 cases:

> applications for administrative expenses shall be filed before the later of: (1) 14 days prior to the hearing on confirmation or, to the extent that the claim arose after the initial deadline, 14 days before any continued hearing on confirmation; or (2) 30 days after the occurrence of the last event giving rise to the claim.[48]

Neither the Officers, Chambers, nor the Directors filed a timely application for allowance of administrative expense. However, § 503(a) provides "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause."[49]

> Even when the court has not set a deadline for filing a request for payment of administrative expenses, "timeliness" under § 503(a) provides a judge with the discretion to deny a request for payment of administrative expenses filed so late in the case as to risk prejudicing other, more attentive, parties in interest. Such an untimely request is not simply barred; rather, the court may consider the cause of the late filing.[50]

Because Debtors obtained approval to pay the Officers reduced compensation, the Officers were required to file an application for allowance of administrative expense for the true-up compensation amounts. Because there was insufficient information provided as to entitlement and amount of compensation for the Directors, the Directors were likewise required to file an application for allowance of the requested compensation. While the Court can consider the Motion

---

[48] Local Rule 3071-1(b).

[49] 11 U.S.C. § 503(a).

[50] *Deere Credit, Inc. v. Wiley (In re Wiley)*, No. 10-12007-SDB, 2014 WL 294330, at *5 (Bankr. S.D. Ga. Jan. 24, 2014) (citing *Colo. Mountain Express, Inc. v. Aspen Limousine Serv., Inc. (In re Aspen Limousine Serv., Inc.)*, 193 B.R. 325, 338 (D. Colo. 1996)).

to Pay as an untimely request for an administrative expense, for the same reasons articulated *supra*, the Court finds cause does not exist to permit the tardy filing.

However, Chambers was not included in the Officer Salary Motion; therefore, the Court considers his salary an ordinary course administrative expense that was not subject to the requirement to file an application based on the terms of the Amended Plan.

### *iv. Reconsideration is Partially Warranted*

The Court finds that there was an error of fact in connection with the Court's ruling as to Chambers and therefore cause exists to reconsider the Order regarding the Compensation solely as to Chambers. However, Debtors have failed to demonstrate the existence of newly available evidence, clear error, or manifest injustice, and have failed to set forth any mistake, inadvertence, surprise, or excusable neglect as to the Officers and the Directors; accordingly, the Court finds that cause does not exist to reconsider the Order as to the Compensation with respect to the Officers and the Directors.

### B. Bonuses

Debtors also sought to pay Bonuses to the Executives based on their efforts to achieve a sale of Debtors' assets. Debtors alleged that these efforts resulted in a sale price double the amount that was proposed pursuant to a prepetition Article 9 sale. As noted above, while Debtors did not seek reconsideration of the Order as to the Bonuses, the Court will take this opportunity to further explain why it denied that request.

All transactions outside the ordinary course of business require court approval pursuant to § 363(b).[51] Courts typically evaluate whether to approve such transactions based on a

---

[51] Section 363(b) provides, in part, that a trustee, including a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

11

determination of whether a debtor's business judgment is sound.[52] This test "is commonly referred to as the 'business judgment' test and is commonly described as 'deferential'"[53] because courts ordinarily defer to a debtor's business judgment.

After concerns of excessive compensation being paid to executives during bankruptcy cases exemplified in a number of high-profile bankruptcy cases in the early 2000s,[54] Congress enacted § 503(c) as part of BAPCPA[55] to curb these excesses.[56] Section 503(c) provides:

> (c) Notwithstanding [the administrative expenses allowable in] subsection (b), there shall neither be allowed, nor paid—
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
>  (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>  (B) the services provided by the person are essential to the survival of the business; and
>  (C) either—
>   (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement

---

[52] *In re FirstEnergy Sols. Corp.*, 591 B.R. 688, 694 (Bankr. N.D. Ohio 2018) ("A court may authorize non-ordinary-course transactions using property of the estate pursuant to Section 363(b)(1) 'when a sound business purpose dictates such action.'" (quoting *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986))).

[53] *Id.* at 694-95 (citing *In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016)).

[54] *See* Allison K. Verderber Herriott, *Toward an Understanding of the Dialectical Tensions Inherent in Ceo and Key Employee Retention Plans During Bankruptcy*, 98 Nw. U. L. Rev. 579, 579 (2004) ("In the age of Enron, WorldCom, Kmart, US Airways, and other bankrupt Fortune 500 companies, the public has become increasingly aware of the compensation schemes that courts have approved for officers and directors of bankrupt corporations.").

[55] "BAPCPA" refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[56] *See, e.g.*, Emily Watson Harring, *Walking and Talking Like A Kerp: Implications of BAPCPA Section 503(c) for Effective Leadership at Troubled Companies*, 2008 U. Ill. L. Rev. 1285, 1286 (2008) ("According to Senator Edward Kennedy, the purpose of section 503(c) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which severely restricts debtor firms' ability to distribute key employee retention payments (KERPs), was 'to stop the travesty of high-level corporate insiders walking away with millions of dollars in bankruptcy while workers and retirees are left empty handed.'" (footnote deleted) (first quoting 151 Cong. Rec. S1991 (daily ed. Mar. 3, 2005) (statement of Sen. Edward Kennedy); and then citing Karen Gross et al., *Legislative Messaging and Bankruptcy Law*, 67 U. Pitt. L. Rev. 497, 503 (2006))); *see also In re Glob. Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) ("The import of the BAPCA provisions dealing with KERPs was Congress's effort 'to eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process. BAPCA imposed a set of challenging standards debtors must meet to have "stay" bonuses approved.'" (quoting Karen Lee Turner & Ronald S. Gellert, *Dana Hits a Roadblock: Why Post-BAPCPA Laws May Impose Stricter KERP Standards*, 3 No. 14 Andrews Bankr. Litig. Rep. 2, 2 (2006))).

employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2) a severance payment to an insider of the debtor, unless [certain enumerated conditions are met]; or

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.[57]

Section 503(c) limits payments to insiders and high-level employees in three ways. First, § 503(c)(1) limits a debtor's ability to pay insiders to stay in its employ, which debtors often implement through key employee retention programs ("KERPs"). Second, § 503(c)(2) limits the ability to pay severance to insiders. As one court summarily put it, "Sections 503(c)(1) and (2) are plainly high hurdles to clear if payments are primarily designed for retention."[58]

However, "[c]ompensation plans that genuinely incentivize insiders are removed from the strictures of § 503(c)(1)."[59] Key employee incentive plans are commonly referred to as "KEIPs" and are analyzed under § 503(c)(3),[60] which "authorizes debtors to make payments outside their ordinary course of business if the payments are 'justified by the facts and circumstances of the case.'"[61] KEIPs are used to encourage high-level employees to increase or maximize the value of the debtor's estate.[62] "A KEIP usually offers a debtor's insiders bonuses for achieving

---

[57] 11 U.S.C. § 503(c).

[58] *In re Glob. Home Prods., LLC*, 369 B.R. at 785.

[59] *In re Country Fresh Holding Co.*, No. 21-30574, 2021 WL 2932680, at *5 (Bankr. S.D. Tex. July 12, 2021) (citing *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006)).

[60] *See, e.g.*, *In re Alpha Nat. Res., Inc.*, 546 B.R. at 356; *In re Residential Cap., LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012).

[61] *In re Country Fresh Holding Co.*, 2021 WL 2932680, at *6 (citing *In re Dana Corp.*, 358 B.R. at 576).

[62] *Id.* at *5 (citing *In re Glob. Home Prods., LLC*, 369 B.R. at 787).

performance-based objectives."[63] Courts look at six factors to determine whether a KEIP meets the "business judgment rule":

> (i) whether the plan is calculated to achieve the desired performance; (ii) whether the cost of the plan is reasonable in the context of a debtor's assets, liabilities, and earning potential; (iii) whether the scope of the plan is fair and reasonable or discriminates unfairly among employees; (iv) whether the plan is consistent with industry standards; (v) whether the debtor performed due diligence in investigating the need for the plan; and (vi) whether the debtor received independent advice in performing due diligence regarding, creating, and authorizing the plan.[64]

Debtors argued that the Bonuses were not subject to scrutiny under § 503(c) because the proposed payments were not a KEIP, a KERP, or severance. Debtors posited that the Bonuses do not fit into any category of prohibited compensation and because the facts are "like no other," and should be allowed as a sound exercise of Debtors' business judgment. Debtors alternatively argued that the Bonuses should be allowed under § 503(c)(3) as being justified under the facts and circumstances of this case.[65]

The Court agrees that the Bonuses are not a KERP or severance, so § 503(c)(1) and (2) are not applicable. First, there is no dispute that the Bonuses requested in this case were to be paid to "insiders" as defined in § 101(31).[66] Second, since the sale of substantially all of Debtors' assets occurred in October 2025[67] and all officers and directors were terminated effective on the Closing Date, the Bonuses are not a KERP, as the Executives were not being incentivized to remain in

---

[63] *Id.* (citing *In re Mesa Air Grp., Inc.*, 10-10018 (MG), 2010 WL 3810899, at *3-4 (Bankr. S.D.N.Y. Sep. 24, 2010)).

[64] *In re GOL Linhas Aereas Inteligentes S.A.*, 661 B.R. 330, 341 (Bankr. S.D.N.Y. 2024) (first citing *In re Dana Corp.*, 358 B.R. at 576-77; then citing *In re Residential Cap., LLC*, 491 B.R. 73, 85-86 (Bankr. S.D.N.Y. 2013); and then citing *In re Borders Grp., Inc.*, 453 B.R. 459, 473-74 (Bankr. S.D.N.Y. 2011)).

[65] The Court notes that while Debtors argued at the March Hearing that the bonuses were not a KEIP, the factors cited by Debtors in the Motion to Pay related to proposed KEIPs. *See* Motion to Pay at 9-10 (citing *In re Residential Cap., LLC*, 491 B.R. at 84).

[66] Section 101(31) provides that if the debtor is a corporation, the term "insider" includes directors and officers. 11 U.S.C. § 101(31)(B).

[67] *See* Sale Order.

Debtors' employ.[68] Third, the Bonuses were not intended to pay damages resulting from the termination of an employment contract and were therefore not severance.[69]

While not a KERP or severance, Debtors' rationale for the Bonuses was akin to the purpose behind a KEIP, namely, to reward performance. Debtors contend that the Executives' efforts doubled the sale price that was achieved by providing investment banking services. However, the Court cannot consider approving the Bonuses based solely on Debtors' business judgment to reward such efforts under § 363 as doing so would ignore the limitations contained in § 503(c). Concluding that § 503(c)(3) is applicable to the Bonuses, the Court cannot find the Bonuses are justified by the facts and circumstances of this case. Other than general or conclusory statements, there was no evidence of any specific sale-related services provided by the Executives. As noted in the Sale Motion, sale efforts had been underway prior to the filing of the bankruptcy cases, and the Debtors' goal was to "maximize value." However, there was insufficient evidence of any correlation between the sale price achieved and the efforts of the Executives. Even if the Court presumed the Executives' efforts multiplied the sale price, KEIPs should be approved in advance and not implemented after a transaction is concluded. Allowing the Bonuses under the circumstances presented in this case would circumvent the requirement to establish performance metrics to incentivize employees because there would be nothing to stop debtors from seeking to pay bonuses without demonstrating the achievement of pre-established goals. As noted by the Court in *In re Country Fresh Holding Co.*, "[t]o ensure that insiders are truly incentivized, the

---

[68] *See In re Country Fresh Holding Co.*, 2021 WL 2932680, at *5 ("[K]ey employee retention plans (KERPs) are aimed at inducing a debtor's employees to remain in the debtor's employ during bankruptcy—'pay to stay' plans." (citing *In re Dana Corp.*, 351 B.R. 96, 98 (Bankr. S.D.N.Y. 2006))).

[69] Severance has been described as "amounts due whenever termination of employment occurs." *In re Dana Corp.*, 351 B.R. at 102 (quoting *Straus-Duparquet, Inc. v. Loc. Union No. 3 Int'l Bhd. of Elec. Workers, A F of L, CIO*, 386 F.2d 649, 651 (2d Cir. 1967)). "Severance pay is a form of compensation to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal." *Id.* (citing *Straus-Duparquet, Inc.*, 386 F.2d at 651).

KEIP's performance targets should not be 'lay-ups.'"[70] To allow otherwise would open the door for debtors to evade the requirements of § 503(c) by seeking compensation as bonuses after the fact.

For the foregoing reasons, it is **ORDERED** as follows:

1.    The Motion for Reconsideration (Doc. No. 373) is **GRANTED IN PART** as set forth herein.

2.    The Court reconsiders the Order (Doc. No. 359) as to Chambers so that Debtors or Liquidating Trustee are authorized to pay Chambers $20,000 as an administrative expense under § 503(b), representing post-petition compensation for the months of June, July, August, and September 2025.

3.    The balance of the relief requested in the Motion for Reconsideration is **DENIED**.

# # #

Attorney Amy Denton Mayer is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Order.

---

[70] *In re Country Fresh Holding Co.*, 2021 WL 2932680, at *6 (quoting *In re Velo Holdings Inc.*, 472 B.R. 201, 211 (Bankr. S.D.N.Y. 2012)).